UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **BOOKER TYRONE WALL, JR.** | * | **CIVIL ACTION NO.  15-2505** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS, JR.** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

On January 18, 2013, Booker T. Wall, Jr., protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. (Tr. 160-172, 27).[1]  He alleged disability as of October 1, 2008,[2] because of testicular cancer,

---

[1] Wall filed prior applications in December 2008 and January 2009, which were denied by an Administrative Law Judge on February 5, 2010, and affirmed by the Appeals Council on October 18, 2010.  (Tr. 82).  He filed additional applications on January 3, 2011, which were denied by an Administrative Law Judge on August 19, 2011, and affirmed by the Appeals Council on November 28, 2012.  *Id*.

[2] At the hearing, Wall amended his disability onset date to November 10, 2011.  (Tr. 44-45).  Thus, for purposes of his application for Title II Disability Insurance Benefits, he had to establish disability as of December 31, 2011, – the last day that he was insured for benefits.  *See* Tr. 29.

diabetes, congestive heart failure, liver disease, high blood pressure, and high cholesterol.  (Tr. 182, 186).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 80-105).  Thereafter, Wall requested and received a hearing on July 8, 2013, before an Administrative Law Judge ("ALJ").  (Tr. 41-67).  In a May 21, 2014, written decision, however, the ALJ determined that Wall was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 24-37).  Wall appealed the adverse decision to the Appeals Council.  However, on December 19, 2014, the Appeals Council denied Wall's request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-4).

On October 9, 2015, Wall filed the instant pro se complaint for judicial review of the Commissioner's final decision.[3]  In his memoranda, he contends that the ALJ did not consider all of his impairments and that he meets various listings.  He also submitted new evidence.  The matter is now before the court.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.

---

[3] The Appeals Council extended Wall's time to file suit until 30 days after receipt of its October 1, 2015, letter.  (Tr. 6).

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled

under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 29). At step two, he found that the claimant suffered severe impairments of obesity, diabetes, hypertension, status

post testicular cancer, depression, and degenerative joint disease of the AC joint. (Tr. 29-30).[4] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 30-32).

## II.     Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[5] except that he can only occasionally climb ramps/stairs (but never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl, with no overhead reaching, but otherwise frequently reach. (Tr. 32-35). He also is limited to unskilled work where interaction with the public and coworkers is merely incidental to the work performed, and where the work is performed in a low stress environment with little changes in routine. *Id*.

## III.     Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that the claimant was

---

[4] The ALJ further found that the claimant's medically determinable impairments of history of high cholesterol, sleep apnea, congestive heart failure, knee pain, and liver steatosis were not severe. *Id*.

[5] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

unable to perform his past relevant work. (Tr. 35). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education, and the ability to communicate in English. (Tr. 35-36). Transferability of skills was immaterial. *Id*.

The ALJ then observed that given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 202.21, Table 2, Appendix 2, Subpart P, Regulations No. 4. (Tr. 36-37). However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent the additional limitations eroded the occupational base for light work. *Id*. In response, the VE identified the representative jobs of dispatcher – light, *Dictionary of Occupational Titles* ("DOT") Code # 222.587-038; and merchandise marker – light, DOT # 209.587-034, that were consistent with the ALJ's RFC and the claimant's vocational profile. *Id*.[6]

## Analysis

Pursuant to the court's scheduling order, plaintiff was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (Feb. 16, 2016, Sched. Order [doc. # 10]). The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the

---

[6] The VE testified that for the parking lot dispatcher job, there were 453,755 positions nationally and 5,420 positions regionally. (Tr. 36, 65). For the merchandise marker job, there were 472,405 positions nationally and 5,661 regionally. *Id*. This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

As recited earlier, from what the court may discern from plaintiff's memoranda and submissions, he contends that the ALJ did not consider all of his impairments, that the ALJ erred in finding that his impairments did not meet or equal various listings, and that new medical records support his disability applications. The court will address plaintiff's arguments, in turn.

Initially, plaintiff contends that the Commissioner gave short shrift to, or ignored his impairments relating to his liver, kidney, and lungs, as well as his complaints of gout. Aside from his liver disease, however, plaintiff failed to list these impairments in his applications, or even mention them at the hearing. *See* Tr. 186, 48-52; *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996) (claimant did not mention additional impairments in his request for benefits or at the hearing). Moreover, although the "ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts," reversal is warranted on that basis only when the claimant demonstrates resulting prejudice. *Id*. "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (internal quotes omitted). Plaintiff has not met his burden here.

Furthermore, the ALJ determined that plaintiff's liver steatosis condition was non-severe. In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)). However,

when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987). Once a severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.154(a)(2) and 416.945(a)(2). Indeed, the ALJ recited the foregoing regulations, and proceeded to consider the medical record and the aggregate impact of plaintiff's impairments. *See* Tr. 28-35, and discussion, *infra*. Thus, the critical issue becomes whether the ALJ's step three determination and residual functional capacity assessment are supported by substantial evidence.

Plaintiff next contends that the medical evidence supports a finding that he meets one or more of the listings of impairments. To establish that a claimant's impairments meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620.

In this case, on November 29, 2013, non-examining medical expert, Don Clark, M.D., answered interrogatories transmitted by the ALJ, wherein he specifically considered, but opined

that plaintiff did not meet various listings, including: 1.02, 2.02, 4.02, 5.05, 6.02, 9.08, 11.14, 12.04, and 13.04. (Tr. 560-567). In his brief, plaintiff cited three listings not mentioned by Dr. Clark: 3.10, 4.01, and 12.06. (Pl. Brief, pg. 2 [doc. # 11]. However, listing 3.10 (sleep-related disorders) specifies that it should be evaluated under listing 3.09 or 12.02. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 3.10. There is no indication that plaintiff meets either of the latter two listings. Furthermore, as for plaintiff's suggestion that he meets listing 4.01, there is no such listing; rather, it serves as the introduction to the category of impairments for the cardiovascular system. Finally, plaintiff made no showing, nor does the record support, that he satisfies the A, B, or C criteria for listing 12.06. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 12.06.

The court further finds that the ALJ's residual functional capacity assessment ("RFC") is supported by substantial evidence. In deriving the RFC, the ALJ relied, in part, upon the opinion of Dr. Clark, who completed a medical source statement regarding the claimant's ability to do work-related activities (physical). (Tr. 568-574). Clark indicated that Wall could frequently lift up to ten pounds and occasionally lift up to twenty pounds. *Id*. He occasionally could carry up to twenty pounds. *Id*. He could sit and stand for one hour at a time without interruption and walk for fifteen minutes at a time. *Id*. He could sit for a total of seven hours in an eight hour work day, stand for two hours, and walk for two. *Id*. He could frequently reach, handle, finger, feel, push/pull, and occasionally operate foot controls. *Id*. He occasionally could balance, stoop, kneel, crouch, and crawl, but never climb stairs, ramps, ladders, or scaffolds. *Id*. He also never could be around unprotected heights, with only occasional exposure to other environmental conditions. *Id*. He was limited to moderate noise. *Id*.[7]

---

[7] The court observes that, although the ALJ discounted Dr. Clark's environmental limitations, the representative jobs identified by the VE do not contemplate exposure to these conditions. *See Dictionary of Occupational Titles*, 1991 WL 672123 and 1991 WL 671802.

The ALJ also relied on the RFC form completed by non-examining agency physician, Johnny Craig, M.D. on March 1, 2013. (Tr. 85-86). Craig opined that Wall occasionally could lift and carry up to twenty pounds and frequently lift and/or carry about ten pounds. *Id*. He could stand and/or walk for a total of four hours and sit for about six hours in an eight hour workday. *Id*. Pushing and pulling were unlimited. *Id*. He occasionally could climb, kneel, and crouch and crawl, and frequently balance and stoop. *Id*. Craig opined that Wall had no environmental limitations. *Id*.

In addition, the ALJ rather generously determined that plaintiff's mental impairment(s) limited him to unskilled work where interaction with the public and coworkers is merely incidental to the work performed, and where the work is performed in a low stress environment with little changes in routine. However, in connection with plaintiff's weekly treatment sessions, his treating psychiatrists consistently assigned him a Global Assessment of Functioning ("GAF") score of 60-65, which indicates mild symptoms. *See e.g.*, Tr. 605-607, 696, 857.[8] Moreover, on his disability application, plaintiff stated that he talked with friends and family members on a daily basis and attended the University of Phoenix. (Tr. 198). He further indicated that he had no trouble getting along with others, and did not indicate any difficulties with stress. (Tr. 198-200). Indeed, throughout his period of alleged disability, plaintiff attended college in pursuit of a

---

[8] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n.2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).
  A GAF of 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.** DSM-IV, pg. 32.

bachelor's degree in human resources and made A's in his classes. (Tr. 1135, 1228, 1250, 808).[9] In fact, he intended to look for work when he finished school in the summer of 2014. (Tr. 1135, 1265).

Plaintiff also faults the ALJ for declining to assign any limitations of functioning as a result of his episodes of fecal incontinence. In his decision, however, the ALJ relied on the fact that Drs. Craig and Clark did not assign any limitations as a result of this impairment. (Tr. 35). The ALJ also remarked that the claimant had learned to manage the episodes. *Id*. Pursuant to the court's own review of plaintiff's treatment records, it appears that the median number of episodes was two per week. On at least one occasion, plaintiff attributed the episode to smoking a cigarette. (Tr. 626-628). Nonetheless, he continued to smoke. (Tr. 696, 808). On another occasion, he thought that the episode was caused by consuming too many greens. (Tr. 1082-1083). In addition, the effects of the episodes were lessened when plaintiff elected to wear protective garments, which, despite his allegations to the contrary, he was able to afford – if he really wanted to. *See* Tr. 1230, 462-469.

Finally, in connection with the instant complaint for judicial review, plaintiff submitted copies of medical records that post-date the relevant period at issue. There is no indication that these medical records were part of the administrative record. Thus, at best, the court could remand the matter to the Commissioner for consideration of plaintiff's recently adduced evidence. However, the court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is

---

[9] Thus, to the extent that the ALJ arguably should have limited plaintiff's exertional capacity to sedentary work, he also arguably should not have assigned any significant limitation of functioning as a result of plaintiff's "mild" mental impairments. Under these circumstances, the VE opined that there were a significant number of sedentary jobs in the national economy that plaintiff could perform. (Tr. 65-66).

good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)). To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Id.* (citation omitted). The evidence also must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.*

Plaintiff's new medical records do not satisfy the foregoing criteria. One record documents a September 21, 2015, emergency room visit for toe pain that was diagnosed as gout. [doc. # 6]. The same record lists plaintiff's longstanding health issues. *Id.* Plaintiff also adduced a note from one of his treating mental health professionals stating that he was being treated for major depressive disorder with psychotic features. [doc. # 8]. However, plaintiff's mental health impairment(s) and weekly treatment sessions already are extensively documented in the record. At minimum, plaintiff's proffered evidence is not material.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).

Upon review of the record, the undersigned finds that the Commissioner's determination that Wall was not disabled under the Social Security Act is supported by substantial evidence and remains free of legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 5th day of January, 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE